appeals. We have three cases to be submitted today on oral argument, and we begin with United States v. Lowe. Good morning. Mr. Donohue. Thank you. May I please report, Mr. Parsons? Thank you for the opportunity to come here and talk about this case today. Quite simply, this case is about what is the meaning of distribution. Were you trial counsel? I was not. Okay. Just always like to know. Okay. Now, I got appointed subsequently to the sentencing. So, the whole question is what is the definition of distribution? The McGabbitt case appears to make it look like distribution can include the receipt of the materials, the solicitation of the materials. Our position is that, you know, the guidelines specifically talks about, in application note number one, how distribution does not include the mere solicitation of the materials. Now, if solicitation and distribution were the same, I mean, there are other statutes that talk about differences between solicit and distribution. I'll give you an example, Title 18 U.S.C. 2252A specifically talks about receipts or distributes, and down in 3B talks about distributes or solicits. Those are three separate words. Let me give you an example. If I go to the store and I buy a Coke, they've distributed the Coke by me buying the Coke, or by me obtaining the Coke from them. Even if I solicit that, I'm not the distributor. I can go home, put it in my refrigerator, take it out on a Friday afternoon, watch TV and drink it. That doesn't mean that I have distributed the Coke. But what you have here, though, as distinguished from some of the other cases that have been cited, is that you have a substantial level of control and coercion over the victim in this case. And I think that's what's accounted for by the statute and the other parts of the guidelines. Solicitation, I mean, if I'm walking down the street and a prostitute walks up and solicits me, do I become a distributor? No. I simply become a buyer. I don't think that the extent of the control is the issue. None of the cases are perfect. McGavitt is not perfect. McGavitt involved pretty much the same issue, but it involved the plain error standard. And the court was pretty clear saying, if there's no controlling precedent in this circuit, then it can't be plain error. It can't rise to the level of plain error. But didn't the court also, before saying there can be no plain error, say that Section 2G21's text and relevant commentary support the district court's application of the enhancement? I mean, it flat out said that the application was consistent with the guidelines. It did say that, but it went on to say that regardless, it just doesn't rise to the level of plain error. We're dealing with a situation where the error has been preserved. Well, didn't it essentially say there's no error, but certainly there's no plain error, because we haven't decided? I just think when you take the whole case into consideration, when they repeatedly referred back to, you know, there not being any controlling precedent here, that regardless of whether it is or not, we're going to, it's not plain error. It doesn't rise to the level of plain error. And since we have a situation here where it was preserved, we're asking the court to look at it differently. We're asking the court to look at it anew under the absolute, you know, the preserved error standard. I mean, if distribution always meant, including when you receive it from other people, then the sentencing guidelines, the application Note 1, would be meaningless. And I think, you know, one of the things that McGavitt talked about was there being a potential conflict between the two application notes in the guideline. I don't believe that there is or have to be a conflict in those two application notes. The guideline itself just says that he distributes. Distribution means any act regarding the transfer of material to somebody else. It doesn't include mere solicitation. If you look at the application Note 3, in the very beginning it says, the defendant knowingly engaged in the distribution. And going back to the first part, it talks about the transfer of material to somebody else. I know I said the cases aren't perfect, but there are other cases that basically talk about distribution as meaning the transfer of material from the defendant to somebody else. But you don't suggest that he was a mere passive participant, do you? In the offense, no. Well, the government argues because he's, in effect, not a passive, but moreover, he's an active participant. That puts him closer in this spectrum on the facts here for the fit. You don't deny he's active. He's not passive. He's not just in the wrong place. He's actively engaged here. And so, you know, no, there may not be another case right on point, but, I mean, you can't get too far from the facts here, right? I'm not trying to get too far from the facts. They are what they are. He's active in the production of the material, okay? He's encouraging these girls to do what they did and then send him the pictures. But that is soliciting the pictures from them. If they wanted to prosecute him for production, they could have done that. Let me change the hypothetical on you. Okay. Let's say he did everything he did in this case. He told the victim exactly what he wanted, how to do it, but instead of send it to me, send it to my friend. Would that be distribution? I believe so. So what's the difference between directing him to send it to another source versus to himself? He's still creating it. He's still asking that it be sent or distributed. Because that involves transfer to another person. I think the another person is a theme that runs throughout this entire description of what distribution is. And that's where that second part, application note number three, would clarify application note number one. You know, it doesn't make any difference if I get the materials, and like people do, they put them on these computer programs where somebody else can access them. And then they say, well, I didn't distribute. Application note number three says, hey, you made it available for access by other people. What about the language in McAvitt that says, because these images were produced and distributed to McAvitt at his request, the district court found that McAvitt knowingly engaged in distribution of child pornography. This finding tracks the language of application note three. Didn't McAvitt specifically look at that already? But that's application note number three. My position is that they were talking about a conflict between application note number one and number three. And I don't believe there should be considered a conflict. I believe that the application note number three helps define what distribution consists of in application note number one. And that is the distribution of materials to somebody else, whether you are the one, whether I give somebody the material, whether I make it available via a computer program, whether I tell somebody else to send the materials to another person, conspired, did it myself, made it available, that is the transfer of materials to somebody else. Otherwise, the language in application note number one, the solicitation, the mere solicitation of the materials, by a defendant would be meaningless. And I understand that he was active in the production of the materials. But I don't think there is anything in here that basically says, you know, if he is active in both the production and then the receipt of the material, the solicitation of material, that constitutes distribution. I think that goes way beyond what these two application notes. So what's the best case you're relying on? Well, I've got the ones cited. You know, the King case, you know, honestly, I know it's a district court opinion out of another court of appeals. But the Merrill case is the one that actually has the best description of what they're citing. Why are you citing King? Didn't King judge the client to deal with the enhancements? So why are you relying on it? Again, just like in McGavitt, this court said that they had not dealt with previously a situation as to what the definition of distribution was. I tried to find anything I could for the court's perusal to basically say, hey, this is what other courts have talked about. No, no, no. You're an able advocate, you're appointed. That's why you've got oral argument. In the case, I'm just saying what's the best case you rely on. You said King. I said, okay, in that case, didn't the district court decline to address the enhancement? I say, why is that your best case you rely on? A case in which the district court did not address the issue that you're raising. Can I back up a second? Sure. District court case. I just talked about going off the top of my head here. Actually, Merrill, I realize it's a district court opinion on another circuit, but that is the one where the district judge really did a pretty thorough analysis of what the distribution consisted of. That was a case where materials were received. He transferred them from, I think, a cell phone to a USB drive, and the government argued about its distribution. They said, and the court repeatedly said, no, it has to be to another person. It has to be to another person. That's what we're basically saying in this situation. Like I said, the application note specifically says three. It talks about the defendant's distribution. It doesn't say that the defendant's participation or solicitation of the distribution. I think that it goes along with the notion that there are two separate harms here. One harm is where a person obtains a child pornography and then distributes it. That continues to harm the child over and over and over and over again. Then a different harm is where it's solicited and just possessed. I think the guidelines and the statutes try to distinguish between the levels of those two harms. I think that's been mentioned as well, is there's two levels of harm. The solicitation of materials, and there's absolutely no evidence that Mr. Lowe ever distributed, transferred these materials to any other person. The solicitation of materials does not equal distribution. Didn't he direct the transfer to another person, though? Isn't the victim, he directed the victim to transfer the materials to him? I guess that gets back to my prior question. The victim transferred to another person at his direction. Whether it was him or somebody else, does it matter? I believe it does. I believe it has to be that the defendant transferred the materials. That's what the guideline talks about, the defendant transferring materials. Again, otherwise, the solicitation language is meaningless. Why even have that in there? We have to assume that Congress and the Sentencing Commission all mean what they say. It does not include the solicitation. Is there a difference between soliciting a defendant who solicits and the victim doesn't comply, and a defendant who solicits and the victim complies? You have solicitations in both, but there's a difference in the facts because one includes the receipt. If I recall correctly, there is some language that deals with drugs. If I'm a buyer, if I go up and I obtain drugs from somebody, I become a receiver, I become a buyer. I do not become a conspirator in their distribution of the drugs. I think that there is language that talks about your receipt does not constitute a participation in the conspiracy to distribute drugs. I think that's the same thing here, going back to my buying the soda at the convenience store. If I go to the convenience store and ask them to sell it to me, that would be distribution under the McGavin situation. That would be distribution under the government's position. I don't think that's what the guideline says. It doesn't account for the difference in distribution of materials to somebody else afterwards, versus just receiving them for their own personal use. So what do you do with the government's suggestion that the fallback position is that any error would be harmless, because of the statements that the district judge made? There's no doubt. We love having Judge Albright in our district. I went up and told him, I said, we're very upset that you're leaving. I'm upset that you're leaving. You can tell him I said so. He had promised he wasn't going to do that, too, when he took the job. I know. I told him. I said, I'm upset. But there's no doubt that Judge Albright used some very strong language. But I believe that there's a big difference between saying it doesn't make any... I would impose the same sentence regardless, and the language that he used. The transcript itself, I've gone through it, and quite honestly, I'm confused as to actually what he said. I'm talking about page 185 of the record, and also on page 200 of the record. It would appear that maybe it was what he was saying. And he even used the words maybe. But he talks about distribution, and it's just confusing. The government cited Hill for the proposition that when it's harmless, the judge says, I'm going to impose a different... I would impose the same sentence regardless of if I've made the error or not. Well, I've tried cases in front of Judge Hittner as well. In Hill, he explicitly said, I'm going to impose the same sentence, or I would impose the same sentence, regardless of how the Court of Appeals rules on that. I think there is a big difference between this is what I said, and well, this is what we believe you intended. In this situation, I mean, Mr. Lowe was extremely young. It's a life sentence. A small light at the end of the tunnel would make a huge difference here. And again, our position is it's not distribution. Therefore, if you take that away, it gives him that small bit of hope. And I think Judge Albright's the one that should decide that. All right. You've saved time for rebuttal. Thank you, Mr. Dunwoody. Mr. Parsons? Good morning. I'm Mr. Court's Zachary Parsons for the United States. Your Honors, this Court should affirm the sentence imposed by the District Court for two reasons. First, because any error that may have occurred with regard to the calculations guidelines is ultimately harmless in the face of the record before the District Court and the ultimate determination of a life sentence. And second, because a plain text reading of both the sentencing guideline as well as the two application notes that deal directly with the conduct engaged in by Mr. Lowe make it clear that a distribution enhancement is appropriate. I assume that the government would like, if possible, for us to be ruling on the substantive issue rather than the harmlessness, because that way there would be Fifth Circuit authority. I think, Your Honor, that both of these issues are winning issues for the government and that addressing... Well, I know, but that wasn't my question. I understand that that's your position. Would it not be helpful if we have the choice to rule on the substantive issue between reconcile the application notes and whatever else we need to do? Clarity in that regard is always going to be helpful, Your Honor. And I think that McGavitt, while addressing both of these issues very thoroughly, as the appellant has pointed out, didn't actually reach the issue. And I believe that the issue should be reached and it can be on a plain text address. But to very briefly discuss the harmless error nature of the Court's determination, Your Honor, the District Court, in making its determination, made a very clear record that it considered all of the conduct of Mr. Lowe, which includes the fact that over a period of months, he made a 13-year-old child repeatedly create child sexual abuse material and then send that material to him. When she was reluctant to create that material, he threatened her with consequences if she didn't comply. When she delayed in sending that material, he threatened her with consequences if she didn't comply. When she didn't send the exact type of material that he requested, he threatened her with consequences and directed her specifically to the type of material he wished to receive. In addition to that, Your Honor, there are 10 other child victims in this case who have been identified. And the Court considered that in making its determination. To quote the District Court on the record, Mr. Lowe, you are a monster, your conduct is beyond words. The Court explicitly stated that he did not believe that the Sentencing Commission could have imagined conduct so dire when it formulated the guidelines for a case of similar ilk. For those reasons, Your Honor, the Court determined that while given a guideline of 360 months to life, a life sentence was appropriate. The same determination would be made if this case were remanded, and that is obvious from the record on the same facts, that would not change regardless. But Your Honor, with regard to the potential conflict between Application Note 1 and 3, that's really where we are. McGavin recognized that in Application Note 1, it says that mere solicitation does not qualify. In Application Note 3, we have a number of different ways in which a person who is not necessarily distributing to a third party may nevertheless be responsible for that distribution under the guidelines. This includes aiding, abetting, neither of which make the person the principal. They both involve engagement with someone else distributing, as well as commanding and inducing. And Mr. Lowe's conduct falls squarely within those brackets. As the Court has already noted, Mr. Lowe controlled and coerced the minor victim in this case. He was not a passive participant in the creation of this sexual abuse material, and he both solicited but also procured the sexual abuse material. It's important to note that in Application Note 1, the phrase isn't solicitation does not qualify. It's mere solicitation. Mere being nothing more than, and solicitation being a request. So nothing more than a request does not qualify. However, as the Court has already noted, a non-passive participant in this process does qualify under Application Note 3, Subsection B. And here, the facts are very clear that throughout the process, Mr. Lowe was an active participant. And I'd like to return to something that the Appellant raised. Examples such as going to the store and buying a Coke, or going to a drug dealer and purchasing illegal drugs. Those are solicitations. However, if you go to a store and you say, you don't have the brand of Coke that I want, I want you to go out and purchase this specific brand of Coke so that I can come here and purchase it. Or if you go to a drug dealer and you say, you don't sell the type of drug that I want, here's a formula by which I want you to create a drug specifically so that I can purchase it. You have gone beyond mere solicitation. You've become an active participant in the production. And then, knowing that you are going to be receiving it, that production is necessarily a part of the transfer. That's what we have here. However, there is ample evidence in the record that throughout the process, Mr. Lowe was directing the creation of this material. He was describing what he wanted. He was demanding and coercing the minor victim to turn it over to him. That process makes him active in the production. And as the Appellant stated, he was active in the production of the materials. Well, Your Honor, that is specifically addressed in Application Note 1 of the Distribution Enhancement. Any act, including production, related to the transfer and distribution, there can be no doubt that the child sexual abuse material was transmitted from the minor victim to the defendant. And there can be no doubt that Mr. Lowe was an active participant in the production of that material that was ultimately transferred. It falls squarely within the guideline. And because it falls squarely within the guideline, the sentence is appropriate as set forth by the District Court. Does the Court have any questions? All right. Thank you, Mr. Parsons. Mr. Donohue for rebuttal. As I talked about before, there's a difference between the production. There's separate statutes for production and distribution. This Court is faced with a situation where you've got to define distribute. And this is going to apply to a whole bunch of other different people if... I'm not saying that Mr. Lowe wasn't involved in the distribution, in the production. He was. However, like I said, they could have charged him with that when he says, I want to receive the materials and he solicits the materials to be sent to me. That does not constitute the distribution. And we can, I guess, go back and forth on the meaning within the term of the application notes. You know, the facts are bad. They are bad. That's why he got a very severe sentence. But I guess one thing that's extremely important to keep in mind is that, you know, in the end, the judge did not have to do a variance. He didn't have to do a departure because the guideline range was 360 to life. In essence, the judge stayed within the guidelines. Without the distribution enhancement, the guideline becomes 292 to 365. A whole lot of time. I've been in many other cases where the judge has made comments about how bad my client was and yet the sentence wasn't life. I don't believe that simply because he got life because the judge said those things, that that means he was going to give him life. Again, what he said versus what we think he said are two different things and I asked the court to ask Judge Albright, first of all, to find the distribution. This doesn't include distribution because as the counsel for the government said, you know, he agreed that McGavitt didn't reach the issue ultimately. And now you have it squarely in front of you. And then the question is whether it's harmless and we don't believe it's possible. I understand your argument. I'm having trouble understanding how if Judge Albright knew that the guideline sentence was 360 to life and he says the guidelines are far too low in my opinion for his conduct, how that suggests that he might give something less than life. Again, going back to that's what we're wondering whether he said. Not what he said. I just think in this situation where how hard would it be to require a district court if this is the sentence that you intend to give, just say so. So that all this, whole trip to New Orleans, we don't have to do all this. If that's what you're going to do regardless, well then that's what you would do. But when you look at, like I said, page 185 and then page 200, he's talking about distribution and I could do a variance or this or that. But then he talks about I'd be making clear for the record that I was sentencing within the guideline range. Well, if the guideline range did not include the distribution, does he still want to stay within the guideline range or does he still want to impose a life sentence? He could say all the same things and still get 365 months. All right. Thank you, Mr. Donohue. And as stated, we do notice that you're court appointed. We wish to thank you for your willingness to take the appointment. You've done a good job on behalf of your client. Thanks for having me. Your case is under submission.